# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 24-1896V**

| | |
|---|---|
| MATT PELLO,<br><br>Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | Chief Special Master Corcoran<br><br>Filed: July 14, 2026 |

*Paul R. Brazil, Muller Brazil, LLP, Dresher, PA, for Petitioner.*

*Parisa Tabassian, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION AWARDING DAMAGES[1]

On November 18, 2024, Matt Pello filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that he suffered a shoulder injury related to vaccine administration ("SIRVA"), a defined Table injury, after receiving an influenza ("flu") vaccine on December 10, 2022. Petition at 1, ¶¶ 1, 9. The matter was assigned to the "Special Processing Unit" (the "SPU"), and although Respondent conceded entitlement, the parties were unable to resolve damages on their own,[3] so I ordered briefing on the matter.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

[3] Approximately five months after I determined Petitioner entitled to compensation, he informed me that the parties had reached an impasse in their damages discussions and requested that I set a briefing schedule. Status Report, filed November 6, 2025, ECF No. 24.

For the reasons set forth below, I find that Petitioner is entitled to an award of damages in the amount of **$54,435.00, representing $53,000.00 for actual pain and suffering, plus $1,435.00 for past unreimbursable expenses.**

## I. Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims. *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. *Graves v. Sec'y of Health & Hum. Servs.,* 109 Fed. Cl. 579 (Fed. Cl. 2013). *Graves* maintained that to do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Id.* at 590. Instead, *Graves* assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id*. at 595. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap. Although *Graves* is not controlling of the outcome in this case, it provides reasoned guidance in calculating pain and suffering awards.

## II. Prior SIRVA Compensation Within SPU[4]

### A. Data Regarding Compensation in SPU SIRVA Cases

SIRVA cases have an extensive history of informal resolution within the SPU. As of July 1, 2026, 5,790 SPU SIRVA cases have been resolved since the inception of SPU more than ten years before. Compensation has been awarded in the vast majority of cases (5,575), with the remaining 215 cases dismissed.

3,139 of the compensated SPU SIRVA cases were the result of a ruling that the petitioner was entitled to compensation (as opposed to an informal settlement), and therefore reflect full compensation as warranted by the record.[5] In only 392 of these cases, however, was the amount of damages determined by a special master in a reasoned decision or ruling.[6] As I have previously stated, the written decisions setting

[4] All figures included in this decision are derived from a review of the decisions awarding compensation within the SPU. All decisions reviewed are, or will be, available publicly. All figures and calculations cited are approximate.

[5] The remaining 2,436 compensated SIRVA cases were resolved via stipulated agreement of the parties without a prior ruling on entitlement. These agreements are often described as "litigative risk" settlements, and thus represent a reduced percentage of the compensation which otherwise would be awarded. Because multiple competing factors may cause the parties to settle a case (with some having little to do with the merits of an underlying claim), these awards from settled cases do not constitute a reliable gauge of the appropriate amount of compensation to be awarded in other SPU SIRVA cases.

[6] The rest of these cases resulting in damages after concession were either reflective of a proffer by Respondent (2,710 cases) or stipulation (37 cases). Although all proposed amounts denote *some* form of agreement reached by the parties, those presented by stipulation derive more from compromise than instances in which Respondent formally acknowledges that the settlement sum itself is a fair measure of damages.

forth such determinations, prepared by neutral judicial officers (the special masters themselves), provide the most reliable guidance in deciding what similarly-situated claimants should also receive.[7]

The data for all categories of damages decisions described above reflect the expected differences in outcome, summarized as follows:

| | **Damages Decisions by Special Master** | **Proffered Damages** | **Stipulated Damages** | **Stipulated[8] Agreement** |
|---|---|---|---|---|
| **Total Cases** | *392* | *2,710* | *37* | *2,436* |
| **Lowest** | $25,000.00 | $4,000.00 | $37,013.60 | $1,000.00 |
| **1st Quartile** | $64,811.00 | $57,596.44 | $82,181.20 | $30,000.00 |
| **Median** | **$85,973.93** | **$76,428.29** | **$109,582.59** | **$46,000.00** |
| **3rd Quartile** | $125,007.45 | $105,000.00 | $160,000.00 | $72,000.00 |
| **Largest** | $1,569,302.82 | $1,845,047.00 | $1,500,000.00 | $550,000.00 |

### B. Pain and Suffering Awards in Reasoned Decisions

In the 392 SPU SIRVA cases in which damages were determined via reasoned decision or ruling, compensation for a petitioner's actual or past pain and suffering varied from $25,000.00 to $215,000.00, with $85,000.00 as the median amount. Only eleven of these cases involved an award for future pain and suffering, with yearly awards ranging from $250.00 to $1,500.00.[9] In one of these cases, the future pain and suffering award was limited by the statutory pain and suffering cap.[10]

---

[7] Of course, even though *all* independently-settled damages issues (whether by stipulation/settlement or proffer) must still be approved by a special master, such determinations do not provide the same judicial guidance or insight obtained from a reasoned decision. But given the aggregate number of such cases, these determinations nevertheless "provide *some* evidence of the kinds of awards received overall in comparable cases." *Sakovits v. Sec'y of Health & Hum. Servs.*, No. 17-1028V, 2020 WL 3729420, at *4 (Fed. Cl. Spec. Mstr. June 4, 2020) (discussing the difference between cases in which damages are agreed upon by the parties and cases in which damages are determined by a special master).

[8] Two awards were for an annuity only, the exact amounts which were not determined at the time of judgment.

[9] Additionally, a first-year future pain and suffering award of $10,000.00 was made in one case. *Dhanoa v. Sec'y of Health & Hum. Servs*., No. 15-1011V, 2018 WL 1221922 (Fed. Cl. Spec. Mstr. Feb. 1, 2018).

[10] *Joyce v. Sec'y of Health & Hum. Servs.*, No. 20-1882V, 2024 WL 1235409, at *2 (Fed. Cl. Spec. Mstr. Feb. 20, 2024) (applying the $250,000.00 statutory cap for actual and future pain and suffering set forth in Section 15(a)(4) before reducing the future award to net present value as required by Section 15(f)(4)(A)); *see Youngblood v. Sec'y of Health & Hum. Servs*., 32 F.3d 552, 554-55 (Fed. Cir.1994) (requiring the application of the statutory cap before any projected pain and suffering award is reduced to net present value).

In cases with lower awards for past pain and suffering, many petitioners commonly demonstrated only mild to moderate levels of pain throughout their injury course. This lack of significant pain is often evidenced by a delay in seeking treatment – over six months in one case. In cases with more significant initial pain, petitioners usually experienced this greater pain for three months or less. Most petitioners displayed only mild to moderate limitations in range of motion ("ROM"), and MRI imaging showed evidence of mild to moderate pathologies such as tendinosis, bursitis, or edema. Many petitioners suffered from unrelated conditions to which a portion of their pain and suffering could be attributed. These SIRVAs usually resolved after one to two cortisone injections and two months or less of physical therapy ("PT"). None required surgery. Except in one case involving very mild pain levels, the duration of the SIRVA injury ranged from six to 30 months, with most petitioners averaging approximately nine months of pain. Although some petitioners asserted residual pain, the prognosis in these cases was positive.

Cases with higher awards for past pain and suffering involved petitioners who suffered more significant levels of pain and SIRVAs of longer duration. Most of these petitioners subjectively rated their pain within the upper half of a ten-point pain scale and sought treatment of their SIRVAs more immediately, often within 30 days of vaccination. All experienced moderate to severe limitations in range of motion. MRI imaging showed more significant findings, with the majority showing evidence of partial tearing. Surgery or significant conservative treatment, up to 133 PT sessions - occasionally spanning several years, and multiple cortisone injections, were required in these cases. In nine cases, petitioners provided sufficient evidence of permanent injuries to warrant yearly compensation for future or projected pain and suffering.

## III. The Parties' Arguments

The parties agree Petitioner should be awarded $1,435.00 for past unreimbursed expenses.[11] Thus, the only area of disagreement is the amount of compensation which should be awarded for Petitioner's past pain and suffering.

Emphasizing the timing of his initial complaint – within a few weeks of vaccination, and ten-month treatment duration, Petitioner seeks $80,000.00 for his past pain and suffering. Brief at 1, 5-6. He favorably compares the facts and circumstances in his case

[11] Petitioner first sought $1,445.00 in past unreimbursed expenses. Petitioner's Brief in Support of Damages ("Brief"), filed Jan. 6, 2026, at 1, 6, ECF No. 26. Although Respondent did not address the issue of expenses in his briefing, during email communications, Respondent's counsel confirmed that Respondent had no objection to any of the claimed expenses but believed that the correct total was $1,435.00. *See* Respondent's Damages Brief ("Opp."), filed Jan. 6, 2026, ECF No. 27; Informal Remark, dated Feb. 2, 2026. In a joint status report, filed on February 10, 2026, the parties confirmed the correct amount was $1,435.00. ECF No. 28.

to those experienced by the petitioners in *Colucci, Smith, Decoretz,* and *Mantagas*[12] – featuring awards ranging from $75,000.00 to $80,000.00. Brief at 4-5. Although he acknowledges the conservative nature of his treatment, Petitioner stresses the persistence he exhibited while attending 45 PT sessions over an eight-month period, noting that "his therapy far outnumber[ed] any of the therapy courses" in these comparable cases. *Id.* at 5. Noting that the "[c]ello was and still is a huge part of [his] life," Petitioner maintains that "[h]e lost the ability to play for an entire year due to his injury." *Id.* at 6; *accord.* Ex. 12 (Petitioner's Damages Declaration).

In contrast, Respondent insists that Petitioner's "overall injury was mild, and . . . proposes a damages award of $47,500.00 for past pain and suffering." Opp. at 6. As better comparable cases, he suggests *Baskin* and *Gibson*[13] - decisions involving past pain and suffering awards of $45,000.00 and $47,500.00, respectively. Opp. at 6-7. Acknowledging that "Mr. Pello's PT course was more extensive than in *Baskin* or *Gibson,*" Respondent emphasizes that Petitioner "saw an orthopedist only once, . . . never received a steroid injection, an MRI, or any prescription pain medications," and suffered a total injury duration of "less than a year." *Id.* at 7.

## IV. Appropriate Compensation for Petitioner's Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of his injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

When performing this analysis, I review the record as a whole to include the filed medical records, affidavits, and sworn declarations and all assertions made by the parties in written documents. I consider prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience adjudicating these cases. However, I base my determination on the circumstances of this case.

---

[12] *Coluccio v. Sec'y of Health & Hum. Servs.,* No. 19-1684V, 2022 WL 17849579 (Fed. Cl. Spec. Mstr. Dec. 15, 2022) (awarding $80,000.00 for past pain and suffering); *Smith v. Sec'y of Health & Hum. Servs.,* No. 21-0409V, 2023 WL 9288086 (Fed. Cl. Spec. Mstr. Dec. 11, 2023) (awarding $77,000.00 for past pain and suffering); *Decoretz v. Sec'y of Health & Hum. Servs.,* No. 19-0391V, 2021 WL 2346468 (Fed. Cl. Spec. Mstr. May 7, 2021) (awarding $75,000.00 for past pain and suffering); *Mantagas v. Sec'y of Health & Hum. Servs.,* No. 20-1720V, 2023 WL 4573855 (Fed. Cl. Spec. Mstr. June 14, 2023) (awarding $75,000.00 for past pain and suffering).

[13] *Baskin v. Sec'y of Health & Hum. Servs.,* No. 21-2207V, 2025 WL 1891826 (Fed. Cl. Spec. Mstr. June 2, 2024) (awarding $45,000.00 for past pain and suffering); *Gibson v. Sec'y of Health & Hum. Servs.,* No. 21-0392V, 2025 WL 1483427 (Fed. Cl. Spec. Mstr. Apr. 16, 2025) (awarding $47,500.00 for past pain and suffering).

A thorough review of the medical records reveals that Mr. Pello (age 64) suffered a mild SIRVA injury – involving ROM limitations with pain on movement as well, especially when reaching behind his back and overhead. He reported an initial pain level of eight out of ten but clarified during PT sessions that he experienced a range which included a minimal rating of no pain. *E.g.*, Ex. 3 at 7 (first orthopedic visit on January 5, 2023); Ex. 4 at 165 (PT evaluation on February 2, 2023). Stating "that his symptoms [we]re not quite as bad as they were previously when he was diagnosed with frozen shoulder,"[14] Petitioner chose "to proceed with just physical therapy [and] hold off on any [steroid] injections." Ex. 3 at 8.

Although he attended a significant amount of PT (45 sessions) over an eight-month period (February - October 2023), Petitioner gained good improvement shortly after his initial evaluation. By late February 2023, he "reported he was pain free throughout today's program" (Ex. 4 at 144) and was "now able to sleep on [his] L shoulder" (*id.* at 142). At his second and only other orthopedic visit on March 16, 2023, he again declined a steroid injection and described "some stiffness in the shoulder when playing cello." Ex. 3 at 10. The medical records clearly reflect a maximum pain level that occurred only sporadically. *E.g.,* Ex. 4 at 78.

By August 2023, Petitioner had obtained substantial improvement related to both ROM and pain severity. He attended only three PT sessions in September 2023, reporting pain ranging from no pain to three and exhibiting a close to normal ROM, especially with active movement. Ex. 4 at 8-21. By his last PT session on October 2, 2023, approximately ten months post-vaccination, Petitioner described being pain free when "reaching overhead or at shoulder height" and was noted to have met all PT goals. *Id.* at 2.

The parties in this case both skew the facts *slightly* to support the pain and suffering amounts they espouse. Petitioner ignores the intermittent nature of his pain, while Respondent only acknowledges in passing the extensive amount of PT Petitioner attended. Similarly, Respondent mistakenly claims that Petitioner required only one orthopedic visit, and Petitioner characterizes his initial treatment delay as a few weeks when actually closer to one month. Neither party mentions the issues Petitioner experienced prior to vaccination, especially during the previous year.

It therefore follows that the appropriate pain and suffering award should fall somewhere between the amounts the parties propose. And a review of the comparable cases they offered supports this proposition.

---

[14] Prior medical records show Petitioner suffered from right shoulder and left elbow pain in 2018, a strain of the trapezius muscle (without mention of which side) in August 2021, lower back pain radiating into the left leg for which oral steroids were prescribed in December 2021, and right-sided Achilles tendon tenderness in June 2022. Exs. 2, 11.

Unlike Petitioner, none of the claimants in the cases he has offered reported instances in which pain was transiently absent. *Coluccio*, 2022 WL 17849579, at *1-2, 4-5; *Smith*, 2023 WL 9288086, at *2-4, 12-13; *Decoretz*, 2021 WL 2346468, at *1-2; *Mantagas*, 2023 WL 4573855, at *4-7. And the symptoms duration in all but the *Coluccio* case lasted more than six months longer than Petitioner's course. *Decoretz*, 2021 WL 2346468, at *1-2; *Mantagas*, 2023 WL 4573855, at *7. Despite the shorter duration (only six months), the *Collucio* petitioner's pain was much more severe (ranging from seven at best and ten at worst). *Coluccio*, 2022 WL 17849579, at *1-2, 4. Furthermore, the *Smith* petitioner's injury occurred during the COVID pandemic, which, no doubt, limited her treatment. *Smith*, 2023 WL 9288086, at *12-13.

Similarly, the cases suggested by Respondent featured awards which are lower than Petitioner's facts and circumstances warrant. Even though her injury occurred during the COVID pandemic, the *Gibson* petitioner's pain levels and symptom duration were clearly less. *Gibson*, 2025 WL 1483427, at *10. And the *Baskin* petitioner failed to mention her shoulder pain until a routine follow-up appointment with her primary care provider two months post-vaccination. *Baskin*, 2025 WL 1891826, at *1. Furthermore, the *Baskin* petitioner reported no issues while "working out with a trainer" only a few weeks thereafter. *Id.*

Still, cases such as *Cyr*[15] - featuring a past pain and suffering award of $75,000.00 - illustrate why the amount proposed by Petitioner ($80,000.00) is too high. The *Cyr* petitioner attended the same amount and duration of PT but reported her symptoms within two days of vaccination. *Cyr,* 2024 WL 991944, at *2, 5. And her injury lasted 25 months, more than twice the duration of Petitioner's SIRVA. *Id.* at *2-4.

Instead, I find that the *Hansler-Pont* and *Roth*[16] cases - featuring pain and suffering awards of $55,000.00 and $58,000.00, respectively - offer the best comparisons. The petitioners in these cases required seven to eight months of PT and gained good symptom resolution within eight to ten months. *Hansler-Pont*, 2023 WL 9231562, at *1 (incorporating the transcript of this Expedited Motions Day case); *Roth*, 2021 WL 4469920, at *2. Although they attended fewer PT sessions (approximately one-half of the amount Petitioner required) neither petitioner reported an occasional lack of pain as

[15] *Cyr v. Sec'y of Health & Hum. Servs.,* No. 21-0012V, 2024 WL 991944 (Fed. Cl. Spec. Mstr. Feb. 6, 2024).

[16] *Hansler-Pont v. Sec'y of Health & Hum. Servs.,* No. 21-0045V, 2023 WL 9231562 (Fed. Cl. Spec. Mstr. Dec. 8, 2023) (awarding $55,000.00 for past pain and suffering); *Roth v. Sec'y of Health & Hum. Servs.,* No. 19-0944V, 2021 WL 4469920 (Fed. Cl. Spec. Mstr. Aug. 31, 2021) (awarding $58,000.00 for past pain and suffering).

Petitioner did. *Hansler-Pont*, 2023 WL 9231562, at *1; *Roth*, 2021 WL 4469920, at *2. Thus, I find that Petitioner's past pain and suffering award should be similar to, albeit slightly less, than what was awarded in these two cases.

## Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $53,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.**[17] **Additionally, Petitioner is entitled to the agreed upon amount for past/actual unreimbursed expenses, $1,435.00.**

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $54,435.00, to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of Court is directed to enter judgment in accordance with this Decision.[18]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[17] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[18] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.